# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

KRISTINA GIBEAU, Individually and on Behalf of All Others Similarly Situated,

        Plaintiffs,

v.

NIAGARA CREDIT SOLUTIONS, INC.,

        Defendant.

Case No.: 19-cv-1123

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Kristina Gibeau is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff, a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant Niagara Credit Solutions, Inc. ("Niagara") is a New York corporation with its principal place of business located at 1212 Abbott Road, Suite D, Lackawanna, NY 14218.

7. Niagara is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Niagara is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Niagara is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

10. On or about June 7, 2019, Niagara mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "CACH LLC" ("CACH") and originally owed to "CITIBANK (SOUTH DAKOTA), N.A. ("Citibank"). A copy of this letter is attached to this Complaint as Exhibit A.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Niagara to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication Niagara mailed to Plaintiff regarding the alleged debt allegedly referenced in Exhibit A.

2

14. <u>Exhibit A</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. <u>Exhibit B</u> also contains the following language:

> As of the date of this letter, you owe $4085.16. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-381-0416.

16. The language stating that: "Because of … late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater" is a materially false, deceptive, and misleading statement.

17. The debt identified in <u>Exhibit A</u> is a consumer credit card account that was accelerated and sold to CACH a debt buyer in 2013 or before. CACH is currently in bankruptcy proceedings in the Southern District of New York.

18. In 2013, CACH filed a small claims lawsuit against Gibeau seeking to collect this account. *CACH, LLC v. Gibeau*, Milwaukee Co. Case No. 2013sc9568 (*filed* March 28, 2013); https://wcca.wicourts.gov/caseDetail.html?caseNo=2013SC009568&countyNo=40&index=0. CACH obtained default judgment on April 22, 2013. *Id.* Plaintiff did not recall ever being served in the state court action.

19. Even if the debt was bearing post-judgment interest, the unsophisticated consumer would understand the statement that the balance may increase as a result of "late charges" or

3

"other charges" to mean that the creditor, or the debt collector, could impose late fees or collection fees in addition to the interest that was actually accruing.

20. Upon information and belief, neither Niagara, nor CACH, could or intended to, collect a late fee. The balance of Plaintiff's account had already been accelerated and reduced to judgment, no party was sending monthly statements to Plaintiff, and no further late fees were permissible. *See, e.g., Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) ("If for whatever reason, the Rizzos did not want to pay the late fees, they were free to pay the loan as accelerated. Such a payment would nullify any obligation to pay post-acceleration late fees.").

21. Also upon information and belief, neither Niagara, nor CACH, could or intended to collect a collection fee. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions (which include credit card accounts), even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

22. Because, upon information and belief, neither the debt collector nor creditor could or would impose any additional "late charges" or "other charges" under Wisconsin law, the statement that the account may increase as a result of these charges is a material misrepresentation. *See Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 367 (7th Cir. 2018) (statement that account was subject to "interest, late fees, and other charges" when the account was subject to interest but not late fees or other charges was a material false and misleading statement).

4

23. <u>Exhibit A</u> also contains the following language:

| Reference Creditor |
| --- |
| CITIBANK (SOUTH DAKOTA), N.A. |
| Our Client and Current Creditor to Whom the Debt is Owed |
| CACH, LLC |

24. <u>Exhibit A</u> states that the "Current Creditor" is CACH, but then confusingly calls Citibank a "Reference Creditor."

25. The unsophisticated consumer would not know what a "reference creditor" is. Niagara's reference to Citibank using the term "creditor," without a modifier indicating that Citibank's interest has terminated, is confusing and misleading.

26. <u>Exhibit A</u> implies that CACH and Citibank are both creditors, or that both CACH and Citibank currently have an interest in the account.

27. The Seventh Circuit found that similar language did not clearly identify the current creditor to whom the debt is owed:

> Nowhere did the letter say that Asset Acceptance currently owned the debts in question. Asset Acceptance was identified as the 'assignee' of another company, not as the current creditor or owner of the debt. The letter went on to say that the referenced account "has been transferred from Asset Acceptance, LLC, to Fulton, Friedman & Gullace, LLP." These statements simply did not say who currently owned the debts. Instead, each recipient was left to guess who owned the debt following the "transfer" of the "account." On its face, then, the letter failed to disclose the information that § 1692g(a)(2) required.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2017).

28. As in *Janetos*, upon receiving <u>Exhibit A</u> an unsophisticated consumer "might correctly guess that [CACH] was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided." *Janetos*, 825 F.3d at 323.

29. A debt collector states the name of the creditor in a confusing manner if it states that the consumer still has an account with the original creditor after the original creditor has sold

5

the debt. *E.g., Taylor v. Alltran Fin. LP*, No. 18-cv-306, 2018 U.S. Dist. LEXIS 159862, at *7 (S.D. Ind. Sept. 19, 2018); *Braatz v. Leading Edge Recovery Solutions, LLC*, No. 11-cv-3835, 2011 U.S. Dist. LEXIS 123118 (N.D. Ill. Oct. 21, 2011).

30. Exhibit A exacerbates the confusion by using the same "Reference" term to signify the *current* account number:

```
Niagara Credit Solutions, Inc. Reference #
                              4190
```

…

| Niagara Credit Solutions, Inc. | Reference Creditor | Total Amount Due |
|---|---|---|
| Reference # 4190 | CITIBANK (SOUTH DAKOTA), N.A. | $4085.16 |
| Date | Our Client and Current Creditor to Whom the Debt is Owed | Original Account # |
| 06-17-19 | CACH, LLC | XXXXX3696 |
| Principal Balance | Interest Balance | Misc Balance |
| $3238.95 | $846.21 | $0.00 |

31. Upon receiving Exhibit A, the unsophisticated consumer would be left to guess whether the debt was owed to Citibank, CACH, Niagara, or some combination of the above, and would be unsure whether the "Reference Creditor" retained some interest in the account.

32. Consumer fraud is rampant in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

> Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands. The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals. Deception is common. Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance; *see also, FTC v. Swatsworth*, 17-cv-340-GCM, 2018 U.S. Dist. LEXIS 142696, at *17 (W.D.N.C. Aug. 22, 2018).

33. The confusing and misleading representations in Exhibit A are material because the unsophisticated consumer would be concerned about the possibility of having to pay the same debt twice. *Janetos*, 825 F.3d at 324-25.

34. Plaintiff read Exhibit A and was confused by it.

35. Plaintiff was misled and confused by Exhibit A.

36. The unsophisticated consumer would be misled and confused by Exhibit A.

37. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

38. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

39. The FDCPA, 15 U.S.C. § 1692-1692p, is a consumer protection amendment to the Consumer Credit Protection Act, that was adopted as Title VIII of the Consumer Credit Protection Act. *See e.g., Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, Case No. 98-C-4280, 1999 U.S. Dist. LEXIS 6933, at *13, 1999 WL 284788, at *4 (N.D. Ill. Apr. 26 1999) ("a key function of the FDCPA provisions of the Consumer Credit Protection Act was to eliminate practices that 'contribute to the number of personal bankruptcies.' ").

40. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting

*Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes ... do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting

challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

41. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

42. Misrepresentations of the character, amount or legal status of any debt and misrepresentations as to the proper party to pay, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of

injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

43. The FDCPA prohibits debt collectors from making confusing statements in a debt collection letter, with the purpose of orally disclosing the information in a non-confusing way. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

44. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of---the character, amount, or legal status of any debt."

46. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

47. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt."

48. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

49. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

50. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

51. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

52. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

53. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also

11

competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

54. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

55. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

56. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

57. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

58. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

12

Case 2:19-cv-01123-PP   Filed 08/05/19   Page 12 of 17   Document 1

59. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

60. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

61. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

62. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

63. Although the FDCPA does not authorize injunctive or declaratory relief, *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 507 n.3 (D. Md. Mar. 11, 2013), these forms of relief are available under the WCA. Wis. Stat. §§ 426.109(1); 426.110(4)(e); 426.110(6)(b).

64. The WCA expressly authorizes individual actions to enjoin "any person who in . . . enforcing consumer credit transactions engages in … False, misleading, deceptive, or unconscionable conduct in enforcing debts … arising from consumer credit transactions." Wis. Stat. § 426.110(2)(c); *see* Wis. Stat. § 426.110(3).

65. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 . . . or by a violation of the federal consumer credit protection act … [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees

13

and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

66. The WCA authorizes customers to bring class actions for injunctive relief to cure violations of Wis. Stat. § 427.104(1).

**COUNT I – FDCPA**

67. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

68. Exhibit A falsely states: "Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater."

69. No additional "late charges" or "other charges" could actually be imposed under Wisconsin law and Defendant does not impose such charges to alleged debts like the one referenced in Exhibit A in its ordinary course of business. *Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018).

70. A false statement that the balance may increase as a result of late charges and other charges is a materially misleading false threat. *Boucher*, 880 F.3d 362.

71. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, and 1692f(1).

**COUNT II – FDCPA**

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. Exhibit A states that the "Current Creditor" is CACH but also identifies Citibank as a "Reference Creditor."

14

74. The unsophisticated consumer would not understand what a "Reference Creditor" is and would believe that a "Reference Creditor" still retains an interest in the consumer's account, particularly alongside the representation that the account's "Reference #" is its current account number. *See, e.g. Janetos*, 825 F.3d at 324-25.

75. Upon information and belief, Citibank is no longer a creditor of Plaintiff's account and did not place the debt with Defendant for collection.

76. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692g(a), and 1692g(a)(2).

## COUNT III – WCA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. <u>Exhibit C</u> falsely states: "Because of … late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater".

79. No additional "late charges" or "other charges" could actually be imposed under Wisconsin law and Niagara does not impose such charges in the ordinary course of business. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018).

80. A false statement that the balance may increase as a result of other charges is a materially misleading false threat.

81. Defendant's false threats can reasonably be expected to threaten or harass the customer.

82. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

15

## COUNT IV – WCA

83. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Exhibit C falsely threatens the customer with the imposition of other charges.

85. Defendant violated Wis. Stat. § 426.110(2)(c).

## CLASS ALLEGATIONS

86. Plaintiff brings this action on behalf of a Class, consisting of:

(a) all natural persons in the State of Wisconsin (b) to whom Defendant Niagara sent a collection letter in the form of Exhibit A to the complaint in this action, (c) while attempting to collect a debt incurred as a result of a consumer credit transaction, (d) where the collection letter was mailed between August 5, 2018 and August 5, 2019, inclusive, (e) and was not returned by the postal service.

87. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

88. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA and/or the WCA.

89. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

90. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

91. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

92. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) declaratory relief;

(b) injunctive relief;

(c) actual damages;

(d) statutory damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: August 5, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN (1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com